Timothy J. Walton  (State Bar No. 184292)
WALTON & ROESS LLP
407 South California Avenue
Suite 8
Palo Alto, CA 93406
Phone: (650) 566-8500
Fax: (650) 618-8687
Email: SarahZ@netatty.com

Attorneys for Plaintiff
SARAH Z.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)

| | |
|---|---|
| SARAH Z., <br><br> Plaintiff, <br><br> vs. <br><br> SEQUOIA UNION HIGH SCHOOL DISTRICT, PATRICK GEMMA, NIKKI WASHINGTON, CLIFF ALIRE, KAREN MCGEE, MARIAN WELCH, OFFICE OF ADMINISTRATIVE HEARINGS and DOES 1-5, <br><br> Defendants. | Case No.: C 07-2389 JL <br><br> **PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF** <br><br> **[20 U.S.C. § 1400 et seq.]** <br> **[42 U.S.C. § 1983]** <br><br> 1. **Individuals with Disabilities Education Act** <br> 2. **Deprivation of Rights Under Color of Authority** <br><br> **DEMAND FOR JURY TRIAL** <br><br> **ADMINISTRATIVE PROCEDURE ACT CASE** |

## I. INTRODUCTION

1. This is a civil action for declaratory relief, equitable relief, and for compensatory damages to redress deprivation of Plaintiff's rights, including the right to a "free appropriate public education" ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), as well as civil rights enjoyed by every citizen of the United States.

## II. JURISDICTION

2. This Court has jurisdiction pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(i)(3), 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331 and 1343. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## III. INTRADISTRICT ASSIGNMENT

3. Events giving rise to this complaint occurred in San Mateo County in the State of California, which is within the San Francisco division of the Northern District of California.

## IV. THE PARTIES

4. Plaintiff SARAH Z. is a minor attending high school.

5. Defendant SEQUOIA UNION HIGH SCHOOL DISTRICT is the entity responsible for providing Plaintiff SARAH Z. with an education.

6. Defendant PATRICK GEMMA is the superintendent of Defendant SEQUOIA UNION HIGH SCHOOL DISTRICT.

7. Defendant NIKKI WASHINGTON is the chief administrator of special education for Defendant SEQUOIA UNION HIGH SCHOOL DISTRICT.

8. Defendant CLIFF ALIRE is the vice principal of Sequoia Union High School.

9. Defendant KAREN MCGEE is a psychologist working for Defendant SEQUOIA UNION HIGH SCHOOL DISTRICT.

10. Defendant MARIAN WELCH is a speech therapist employed by Defendant SEQUOIA UNION HIGH SCHOOL DISTRICT

11. Defendant OFFICE OF ADMINISTRATIVE HEARINGS is a quasi-judicial tribunal established by the California Legislature.

12. Plaintiff does not know the true names or legal capacities of the defendants sued herein as DOES 1 through 100, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated

herein as a DOE is legally responsible in some manner for the matters herein alleged, and is legally responsible in some manner for causing the injuries and damages to Plaintiff as alleged herein.

## V. ALLEGATIONS

13. The term "free appropriate public education" ("FAPE") means special education and related services that are available to the student at no cost to the parents, that meet the State educational standards, and that conform to the student's Individual Education Plan ("IEP").  (20 U.S.C. § 1401(9).)

14. Under the federal IDEA and state law, students with disabilities have the right to a FAPE. (20 U.S.C. § 1400, et seq.; Cal. Ed. Code § 56000, et seq.)

15. "Special education" is defined as specially designed instruction, at no cost to parents, to meet the unique needs of the student.  (20 U.S.C. § 1401(29).)

16. The term "related services" includes transportation and other developmental, corrective, and supportive services as may be required to assist a child to benefit from special education.  (20 U.S.C. § 1401(26).)

17. Once a child is identified under the IDEA as disabled, the local education agency must identify the unique educational needs of that child by appropriate assessment, create annual goals and short-term benchmarks to meet those needs, and determine specific services to be provided. (Cal. Ed. Code §§56300-56302; 20 U.S.C. § 1412.)

18. A school district must offer a student eligible for special education an Intervention Education Plan ("IEP") that is reasonably calculated for educational benefit.

19. An IEP must state the beginning dates, frequency, and duration of offered services.

20. Every school district must have a triennial IEP for each of its students in special education.

21. An IEP must include a transition plan that contains appropriate postsecondary goals.

## V. STATEMENT OF FACTS

22. Plaintiff, a fifteen year old female student, is eligible for special education because of a speech and language impairment.

23. In order to benefit from educational opportunities, Plaintiff requires additional assistance because of her disability.

24. Plaintiff's disability also causes her to experience frustration, which manifests in behavioral problems.

25. Plaintiff has been receiving low and failing grades since entering high school within the district of Defendant SEQUOIA UNION HIGH SCHOOL DISTRICT ("the District").

26. Plaintiffs parents believe that Plaintiff's poor grades are a result of Defendant's failure to provide services.

27. Plaintiff has a Behavior Intervention Plan that was developed on December 1, 2003, and revised in January, 2005.

28. Dr. Frank Marone, hired by the District, supervised and provided behavioral services to student from Kindergarten to 8th grade.

29. The last IEP that was agreed to was in March 2004, when Plaintiff was in middle school.

30. Plaintiff had a Triennial IEP on January 26, 2006, at which they discussed Plaintiff's needs.

31. Plaintiff was found eligible for special education under "speech and language impairment" at the IEP that took place on January 26, 2006.

32. As a result of the meeting, Defendant sent an IEP proposal to Plaintiff's parents on February 16, 2006.

33. The IEP offer dated January 26, 2006, was sent by the District via US mail and received by Plaintiff's parents on February 16, 2006.

34. A notarized dissent letter was sent to Defendant via US certified return receipt mail on February 21, 2006, and again on February 23, 2006.

35. Plaintiff faxed the dissent letter dated Feb 21, 2006 to the Defendant District care of Defendant MCGEE and another employee of the District on February 23, 2006.

36. In the dissent letter, parents consented to retaking of tests in math where Plaintiff received a D or F and speech therapy for 30 minutes. Parents rejected evaluation from the school psychologist and Resource Specialist Program ("RSP") teacher services. Parents requested additional services in the form of the opportunity to retake tests in Science, English, French, and

Social Studies as needed for low grades, the opportunity to redo homework in which Plaintiff does poorly, the opportunity to complete late or missed homework, attend summer school and 3 hours of tutoring per week in math and science. Also, the parents requested Defendant allow Dr. Frank Marone, who has worked with Plaintiff for a number of years, to attend hearings and observe the student at school. In addition, parents requested that Defendant obtain consent prior to changing Plaintiff's program, honor the stay put provisions, and provide behavior consultation and services by a licensed behaviorist.

37. Defendant would not agree to the parental requests.

38. The March 2004 IEP remained in effect.

39. At an IEP meeting on November 3, 2006, Defendant offered Plaintiff substantially the same program offered in January with a few additions.

40. The IEP that took place on November 3, 2006, was interrupted by the District's counsel to fax parents a document entitled "Procedural Safeguard Notice".

41. On November 13, 2006, Parents consented to retaking tests in math where Plaintiff received a D or F, speech therapy for 30 minutes, preferential seating and extended time on tests and assignments. Parents asked for further information on the Resource Specialist Program ("RSP") before agreeing to allow it into the IEP. Parents requested additional services in the form of the opportunity to retake tests in Science, English, French, and Social Studies as needed for low grades, the opportunity to redo homework in which Plaintiff does poorly, the opportunity to complete late or missed homework, attend summer school and 3 hours of tutoring per week in math and science if Plaintiff received a low grade. Also, Plaintiff's parents requested Defendant to allow Dr. Frank Marone, who has worked with Plaintiff for a number of years, to attend hearings and observe the student at school. In addition, parents requested that the school district obtain consent prior to changing Plaintiff's program and honor the provisions of the last agreed-upon IEP.

42. Defendant failed to act on the parent request, or reply at all in writing, so the March 2004 IEP continued in effect.

43. Defendants significantly impeded Plaintiff's opportunity to participate in the decisional process by refusing to include her parents' dissenting views in the IEP documents.

44. Each IEP offer failed to state the beginning dates, frequency, and duration of services.

45. None of the IEP offers contained a valid transition plan.

46. Defendant failed to perform its obligation of providing requisite educational opportunities to meet the needs of the Plaintiff.

47. Defendant also failed to discharge its obligation to provide highly qualified service providers, such as an appropriately trained and credentialed speech therapist.

48. The District representative at IEPs was Defendant KAREN MCGEE. She refused to honor "stay put", wrote an incomplete psychological evaluation, and is not certified by the National Board of Psychology or the California Board of Psychology.

49. Defendant CLIFF ALIRE testified at the due process hearing that he didn't know Plaintiff was a special education student or that she had an IEP or Behavioral Intervention Plan. He refused to protect Plaintiff when she asked for help when she was being harassed by other students. Defendant ALIRE violated the Behavioral Intervention Plan by inviting law enforcement officials on campus without following the Behavioral Intervention Plan.

50. Defendant NIKKI WASHINGTON refused to honor "stay put". Her IEP documents failed to conform to statutory guidelines. She received the IEP dissent letter from Plaintiff's parents, but denied that she received it and refused to make it part of the IEP.

51. Plaintiff filed a request for a due process hearing that was received by the OFFICE OF ADMINISTRATIVE HEARINGS ("The OAH") on December 4, 2006.

52. The OAH scheduled the Due Process Hearing for February 1, 2007, more than 45 days after the request.

53. The OAH never sent notice of a pre-hearing conference. The OAH called on the morning of January 29, 2007, to inform Plaintiff's parent of a pre-hearing conference to commence immediately. Plaintiff's parent was compelled to attend the pre-hearing conference without preparation or prior notice.

54. Plaintiff's mother sent a fax on January 29, 2007, asking for information about the hearing date and the scheduling of the pre-hearing conference, but her request was ignored.

55. The OAH denied parent the opportunity to subpoena a witness, Defendant PATRICK GEMMA.

56. During the due process hearing, Defendant's psychologist, Defendant MCGEE, admitted that she was not certified by the California Board of Psychology or National Board of Psychology.

57. Defendant MCGEE also testified that she could not respond to a dissent letter prior to having a signed IEP. She also testified that the District could not implement any portion of an IEP unless the parents agreed in full to the District offer.

58. Defendant CLIFF ALIRE stated at the due process hearing, "I found out that Sarah was a special ed [sic] student and that she had an IEP on November 3, 2006 [date of her last IEP, at which he appeared]".

59. Sarah received and is still receiving tutoring services from "Academic Trainers" in Menlo Park.

## FIRST CAUSE OF ACTION

**(Violations of the Individuals with Disabilities Education Act)**

**(Against Defendants SEQUOIA UNION HIGH SCHOOL DISTRICT and DOES 1-5)**

60. Plaintiff realleges and incorporates by reference paragraphs 1 through 59 above.

61. Defendant has violated Plaintiff's rights by failing to provide a "free appropriate public education" ("FAPE") as required by federal and California state law.

62. Defendant denied Plaintiff a FAPE by failing to provide individual tutoring in math and science.

63. Defendant denied Plaintiff a FAPE by failing to adopt and follow a behavior intervention plan.

64. Defendant denied Plaintiff a FAPE by failing to offer a transition plan.

65. Defendant denied Plaintiff a FAPE by failing to state in an Individual Education Plan ("IEP") documents the beginning dates, frequency, and duration of offered services.

Plaintiff's First Amended Complaint For Damages, Declaratory And Injunctive Relief

66. Defendant denied Plaintiff a FAPE by refusing to comply with the stay-put requirement while drafting a new IEP.

67. Defendant denied Plaintiff a FAPE by failing to provide prior written notice when initiating, changing or refusing identification, evaluation, educational placement of provision of FAPE.

68. Defendant denied Plaintiff a FAPE by failing to answer in writing specific written queries by parents.

69. Defendant denied Plaintiff a FAPE by failing to provide all services provided in IEP.

70. Defendant denied Plaintiff a FAPE by failing to provide services provided in an individual setting.

71. Defendant denied Plaintiff a FAPE by failing to provide highly qualified service providers.

72. Defendant denied Plaintiff a FAPE by refusing to allow opportunities to retake tests or resubmit late or missing homework.

73. Defendant denied Plaintiff a FAPE by failing to include parents' statements in the IEP.

74. Defendant denied Plaintiff a FAPE by failure to meet goals.

75. Defendant violated Plaintiff's rights by denying procedural due process as required by federal and California state law.

76. As a result of Defendant's refusal to provide FAPE, Plaintiff has been damaged under the law.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

## SECOND CAUSE OF ACTION

**(Deprivation of Rights Under Color of Authority)**

**(Against Defendants PATRICK GEMMA, NIKKI WASHINGTON, CLIFF ALIRE, KAREN MCGEE, MARIAN WELCH, OFFICE OF ADMINISTRATIVE HEARINGS and DOES 6-10)**

77. Plaintiff realleges and incorporates by reference paragraphs 1 through 59 above.

78. Plaintiff is a citizen of the United States of America with rights as a citizen under federal law.

79. Congress intended that its laws would protect Plaintiff and other citizens similarly situated.

80. The right to sue is consistent with the statutory purpose of the IDEA.

81. Plaintiff's cause of action is not traditionally relegated to the states.

82. Procedural due process and substantive due process are rights unambiguously conferred by the federal Constitution.

83. Defendant's policies, practices and customs discriminate with deliberate indifference to the rights of disabled Americans.

84. As a result of Defendant's deprivation of her rights, Plaintiff has been damaged under the law.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

## V.  PRAYER FOR RELIEF

A.  Equitable relief in the form of an injunction requiring Defendant SEQUOIA UNION HIGH SCHOOL DISTRICT to provide compensatory education;

B.  Equitable relief in the form of an injunction requiring Defendant SEQUOIA UNION HIGH SCHOOL DISTRICT to provide procedural due process;

C.  Declaratory relief in the form of a judgment that Plaintiff SARAH Z. has been denied a free appropriate education;

D.  Declaratory relief in the form of a judgment that Plaintiff has been denied procedural due process;

E.  Damages in an amount determined by the Court;

F.  Attorneys' fees and costs of suit, as allowed by law; and

G.  Such other and further relief as the Court deems proper.

DATED: June 11, 2007                                     WALTON & ROESS LLP

BY: /s/ Timothy J. Walton
TIMOTHY J. WALTON
Attorneys for the Plaintiff

DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial as provided in Federal Rule of Civil Procedure § 38(b).

DATED: June 11, 2007                    WALTON & ROESS LLP

BY: /s/ Timothy J. Walton
TIMOTHY J. WALTON
Attorneys for the Plaintiff