1  Timothy J. Walton (State Bar No. 184292)
   WALTON & ROESS LLP
2  407 South California Avenue
   Suite 8
3  Palo Alto, CA 93406
   Phone: (650) 566-8500
4  Fax: (650) 618-8687
   Email: SarahZ@netatty.com
5

6  Attorneys for Plaintiff
   SARAH Z.
7

8                    UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)

10

11 SARAH Z.,                          )  Case No.: 07-2389 SI
                                      )
12          Plaintiff,                )  **PLAINTIFF'S OPPOSITION TO**
                                      )  **MOTION TO DISMISS**
13     vs.                            )
                                      )  Date:   November 30, 2007
14 SEQUOIA UNION HIGH SCHOOL          )  Time:   10:00 a.m.
   DISTRICT, *et al.*,                )  Dept:   Courtroom 10, 19th Floor
15                                    )  Judge:  Honorable Susan Illston
            Defendant.                )
16

17

18              I.      INTRODUCTION

19     Defendants seek to dismiss Plaintiff's action on the alleged grounds that Plaintiff's

20 complaint is indefinite. In fact, Plaintiff's complaint has provided a short and plain statement of

21 the claims. No more is required under the law. This Court should deny the motion or grant leave

22 to Plaintiff to file an amended complaint.

23
              II.     STATEMENT OF FACTS
24
       On a motion to dismiss, allegations of material fact are taken as true and are construed in
25
   the light most favorable to the nonmoving party. (*Daniel v. County of Santa Barbara*, 288 F.3d

                                          1

1   375, 380 (9th Cir. 2002) (quoting *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d

2   661, 663 (9th Cir. 2000)).) "Review is limited to the complaint." (*Cervantes v. City of San Diego*,

3   5 F.3d 1273, 1274 (9th Cir. 1993).) "Generally, a district court may not consider any material

4   beyond the pleadings in ruling on a Rule 12(b)(6) motion." (*Hal Roach Studios, Inc. v. Richard*

5   *Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).) Defendants' evidence supports the

6   Plaintiff's pleading allegations.

7          Plaintiff, a fifteen years old female student, is eligible for special education because of a

8   speech and language impairment. (Alberti Declaration in Support of Motion to Dismiss ("Alberti

9   Declaration") at ¶ 1, Ex. A [OAH Decision dated February 23, 2007] ("Ex. A"), at 3.) In order to

10  benefit from educational opportunities, Plaintiff requires additional assistance because of her

11  disability. (*See id.* at ¶ 3, Ex. A at 3.) Plaintiff's disability also causes her to experience

12  frustration, which manifests in behavioral problems. (*Id.*) Plaintiff has been receiving low and

13  failing grades since entering high school within the district of Defendant SEQUOIA UNION

14  HIGH SCHOOL DISTRICT ("the District"). (*Id.* at ¶ 11, Ex. A at 4.) Plaintiff's parents believe

15  that Plaintiff's poor grades are a result of Defendant's failure to provide services. (Plaintiff's First

16  Amended Complaint ("FAC") at ¶ 26.)

17         Plaintiff has a Behavior Intervention Plan that was developed on December 1, 2003, and

18  revised in January, 2005. (*Id.* at ¶ 27.) Dr. Frank Marone, hired by the District, supervised and

19  provided behavioral services to student from Kindergarten to 8th grade. (*Id.* at ¶ 28.) The last

20  Individual Education Plan ("IEP") that was agreed to was on March 5, 2004, when Plaintiff was

21  in middle school. (Alberti Declaration at ¶ 5, Ex. A at 4.) Plaintiff had a Triennial IEP on January

22  26, 2006, at which they discussed Plaintiff's needs. (*Id.* at ¶ 7, Ex. A at 4.) Plaintiff was found

23

24  eligible for special education under speech and language impairment at the IEP that took place

25

Plaintiff's Opposition to Motion to Dismiss.

1    on January 26, 2006. (*Id.*at ¶ 9, Ex. A at 4.) As a result of the meeting, Defendant sent an IEP

2    proposal to Plaintiff's parents on February 16, 2006. (FAC at ¶ 32.)

3        The IEP offer dated January 26, 2006, was sent by the District via US mail and received

4    by Plaintiff's parents on February 16, 2006. (*Id.* at ¶ 33.) A notarized dissent letter was sent to

5    Defendant via US certified return receipt mail on February 21, 2006, and again on February 23,

6    2006. (*Id.* at ¶ 34.) Plaintiff faxed the dissent letter dated February 21, 2006, to the Defendant

7    District care of Defendant MCGEE and another employee of the District on February 23, 2006.

8    (*Id.* at ¶ 35.)

9        In the dissent letter, parents consented to retaking of tests in math where Plaintiff

10   received a D or F and speech therapy for 30 minutes. (*Id.* at ¶ 36.) Parents rejected evaluation

11   from the school psychologist and Resource Specialist Program ("RSP") teacher services. (*Id.*)

12   Parents requested additional services in the form of the opportunity to retake tests in Science,

13   English, French, and Social Studies as needed for low grades, the opportunity to redo homework

14   in which Plaintiff does poorly, the opportunity to complete late or missed homework, attend

15   summer school and 3 hours of tutoring per week in math and science. (*Id.*) Also, the parents

16   requested Defendant to allow Dr. Frank Marone, who has worked with Plaintiff for a number of

17   years, to attend hearings and observe the student at school. (*Id.*) In addition, parents requested

18   that Defendant obtain consent prior to changing Plaintiff's program, honor the stay put

19   provisions, and provide behavior consultation and services by a licensed behaviorist. (*Id.*)

20   Defendant would not agree to the parental requests. (*Id.* at ¶ 37.) The March 2004 IEP remained

21   in effect. (Alberti Declaration at ¶ 9, Ex. A at 4.)

22       At an IEP meeting on November 3, 2006, Defendant offered Plaintiff substantially the

23   same program offered in January with a few additions. (*Id.* at ¶ 10, Ex. A at 4.) The IEP that took

3

1   place on November 3, 2006, was interrupted by the District's counsel to fax parents a document

2   entitled "Procedural Safeguard Notice." (FAC at ¶ 40.) On November 13, 2006, Parents

3   consented to retaking tests in math where Plaintiff received a D or F, speech therapy for 30

4   minutes, preferential seating and extended time on tests and assignments. (*Id.* at ¶ 41.) Parents

5   asked for further information on the Resource Specialist Program ("RSP") before agreeing to

6   allow it into the IEP. (*Id.*) Parents requested additional services in the form of the opportunity to

7   retake tests in Science, English, French, and Social Studies as needed for low grades, the

8   opportunity to redo homework in which Plaintiff does poorly, the opportunity to complete late or

9   missed homework, attend summer school and 3 hours of tutoring per week in math and science if

10  Plaintiff received a low grade. (*Id.*) Also, Plaintiff's parents requested Defendant to allow Dr.

11  Frank Marone, who has worked with Plaintiff for a number of years, to attend hearings and

12  observe the student at school. (*Id.*) In addition, parents requested that the school district obtain

13  consent prior to changing Plaintiff's program and honor the stay put provisions of the last agreed

14  upon IEP. (*Id.*) Defendant failed to act on the parent request, or reply at all in writing, so the

15  March 2004 IEP continued in effect. (Alberti Declaration at ¶ 10, Ex. A at 5.)

16          Defendants significantly impeded Plaintiff's opportunity to participate in the decisional

17  process by refusing to include her parents' dissenting views in the IEP documents. (FAC at ¶ 43.)

18  Each IEP offer failed to state the beginning dates, frequency, and duration of services. (*Id.* at ¶

19  44.) For example, the proposal that Student retake D or F math tests in the column for frequency,

20  the offer merely states "as needed". (Alberti Declaration at ¶ 47, Ex. A [OAH Decision dated

21  February 23, 2007], at 10.) None of the IEP offers contained a valid transition plan. (FAC at ¶

22  45.) Defendants failed to perform their obligation of providing requisite educational

23  opportunities to meet the special needs of the student. (*Id.* at ¶ 46.) Defendants also failed to

4

1    discharge their obligation to provide highly qualified service providers, such as an appropriately

2    trained and credentialed speech therapist. (*Id.* at ¶ 47.)

3          The District representative at IEPs was Defendant KAREN MCGEE. (*Id.* at ¶ 48.) She

4    refused to honor "stay put", wrote an incomplete psychological evaluation, and is not certified by

5    the National Board of Psychology or the California Board of Psychology. (*Id.*) Defendant CLIFF

6    ALIRE testified at the due process hearing that he didn't know Plaintiff was a special education

7    student or that she had an IEP or Behavioral Intervention Plan. (*Id.* at ¶ 49.) He refused to protect

8    Plaintiff when she asked for help when she was being harassed by other students. (*Id.*) Defendant

9    ALIRE violated the Behavioral Intervention Plan by inviting law enforcement officials on

10   campus without following the Behavioral Intervention Plan. (*Id.*) Defendant NIKKI

11   WASHINGTON refused to honor "stay put". (*Id.* at ¶ 50.) Her IEP documents failed to conform

12   to statutory guidelines. (*Id.*) She received the IEP dissent letter from Plaintiff's parents, but

13   denied that she received it and refused to make it part of the IEP. (*Id.*)

14         Plaintiff filed a request for a due process hearing that was received by the OFFICE OF

15   ADMINISTRATIVE HEARINGS ("The OAH") on December 4, 2006. (*Id.* at ¶ 51.) The OAH

16   scheduled the Due Process Hearing for February 1, 2007, more than 45 days after the request.

17   (*Id.* at ¶ 52.) The OAH never sent notice of a pre-hearing conference. (*Id.* at ¶ 53.) The OAH

18   called on the morning of January 29, 2007, to inform Plaintiff's parent of a pre-hearing

19   conference to commence immediately. (*Id.*) Plaintiff's parent was compelled to attend the pre-

20   hearing conference without preparation or prior notice. (*Id.*)

21         Plaintiff's mother sent a fax on January 29, 2007, asking for information about the

22   hearing date and the scheduling of the pre-hearing conference, but her request was ignored. (*Id.*

23   at ¶ 54.) The OAH denied Plaintiff's parent the opportunity to subpoena a witness, Defendant

Plaintiff's Opposition to Motion to Dismiss.

1  PATRICK GEMMA at the due process hearing. (*Id.* at ¶ 55.) During the due process hearing, the

2  District's psychologist, Defendant MCGEE, admitted that she is not certified by the California

3  Board of Psychology or National Board of Psychology. (*Id.* at ¶ 56.) Defendant MCGEE also

4  testified that she could not respond to a dissent letter prior to having a signed IEP. (*Id.* at ¶ 57.)

5  She also testified that the District could not implement any portion of an IEP unless the parents

6  agreed in full to the District offer. (*Id.*) Defendant CLIFF ALIRE stated at the due process

7  hearing, "I found out that Sarah was a special ed [sic] student and that she had an IEP on

8  November 3, 2006 [date of her last IEP, at which he appeared]". (*Id.* at ¶ 58.) After the hearing,

9  an OAH decision was rendered on February 23, 2007. Sarah received and is still receiving a

10  private provider paid for by her parents. (*Id.* at ¶ 59.)

11

12  ## III.    SUMMARY OF ARGUMENT

13      The Individuals with Disabilities Education Act ("IDEA") requires that the states provide

14  a free and appropriate public education for students who qualify for services under the IDEA.

15  The IDEA has both a procedural and substantive component. The procedural component

16  includes a requirement that: 1) parents be provided prior written notice before a proposed change

17  in placement occurs; 2) that the IEP include a formal specific written placement offer; and

18  3) parents be given the opportunity to present complaints about the IEP. The Supreme Court has

19  noted that the highly technical procedural requirements were intended by Congress to be

20  followed precisely and that the role of the parents in the IEP process is an integral part of the

21  IDEA. (*See W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23*, 960 F.2d 1479 (9th Cir.

22  1992).) Defendants failed to comply with the procedural requirements of the IDEA when they

23  failed to provide prior written notice of a proposed change in IEP and unilaterally change the

24  services offered to the Student without the agreement of the complete IEP team. As a result of

25

Plaintiff's Opposition to Motion to Dismiss.

1   Defendants' failure to comply with the procedural requirements of the IDEA, Sarah's education,

2   and the Parents' ability to participate in the IEP process, were substantially interfered with.

3          The substantive component of the IDEA requires that a student be provided with an

4   education that meets her unique needs. In order to determine if an education rises to this

5   standard, the proposed program must be demonstrated to be reasonably calculated to provide an

6   educational benefit. In the case at bar, the proposed IEP fails to comply with the substantive

7   components of the IDEA.

8          Further, under the IDEA, when the school system fails to provide a free and appropriate

9   public education, the parents of the disabled student are entitled to appropriate relief. This relief

10  may include reimbursement for the cost of private school tuition and attorney fees. (*See* 42

11  U.S.C. § 1988.) Sarah's parents agreed with the Defendants that additional services should be

12  provided to improve Sarah's D or F grade in subjects such as math. However, the District's

13  proposed IEP failed to provide Sarah a free and appropriate public education, so her parents are

14  entitled to reimbursement for the cost of the private provider and the attorney's fees expended

15  herein.

16

17                              IV.   **DISCUSSION**

18

19  **A. This Court Should Not Overly Rely On The State Administrative Process.**

20         The IDEA's provisions governing district court review of state administrative decisions

21  states that "In any action brought under this paragraph the court shall receive the records of the

22  administrative proceedings, shall hear additional evidence at the request of a party, and, basing

23  its decision on the preponderance of the evidence, shall grant such relief as the court determines

24  is appropriate." (20 U.S.C. § 1415(e)(2).) The ordinary meaning of the language in 20 U.S.C. §

25  1415(e)(2) confers broad discretion on the court.

1    The Supreme Court has determined that it is important the Courts make "independent

2    decisions" based on the preponderance of the evidence, when giving "due weight" to the

3    determinations made during the state administrative process. (*Hendrick Hudson Dist. Bd. Of*

4    *Educ. v. Rowley*, 458 U.S. 176 (1982).) The deference afforded by the Court to a hearing officer's

5    factual findings should be premised on a correct legal analysis that the proper procedural

6    requirements have been utilized in the IEP process. The reviewing Court must not simply adopt

7    the state administrative findings without an independent re-examination of the evidence. As

8    noted by the Supreme Court, the Court's role in reviewing the administrative proceeding

9    concerning IDEA "is by no means an invitation to the Courts to substitute their own notions of

10   sound educational policy."  (*Id.*, 458 U.S. at 206.)

11   

12   In the instant case, Defendants have violated proper procedural requirements. Therefore,

13   this Court should not give "due weight" to the state administrative process because to deny

14   Plaintiff's action would mean that Sarah's right to a free appropriate public education, her parents'

15   right to participate fully in developing a proper IEP, as well as all of the procedural safeguards of

16   the IDEA, would be less than complete.

17   

18   **B. The IDEA was Enacted to Ensure That Students with a Disability Are Provided a Free and Appropriate Public Education.**

19   

20   This case is brought before the Court in accordance with the Individuals with Disabilities

21   Education Act. In 1975, Congress enacted the Education for All Handicapped Children's Act

22   Over the course of time, various amendments have been made to the Act and it is commonly

23   referred to as the "IDEA." According to Congress, the purpose of the IDEA is:

24   

25   (1) (A) to ensure that all children with disabilities have available to them a free and appropriate public education that ***emphasizes special education and related services designed to meet their unique needs*** and prepare

8

them for employment and independent living; (B) to ensure that the rights of children with disabilities and parents of such children are protected; and (C) to assist States, localities, educational service agencies, and Federal agencies to provide the education of the children with disabilities;[...] (3) to ensure that educators and parents have the necessary tools to improve educational results for their children with disabilities by supporting systemic-change activities;[...] (20 U.S.C. § 1400(d) (emphasis added)).

Once a child is identified under the IDEA as disabled, the local education agency must identify the unique educational needs of that child by appropriate assessment, create annual goals and short-term benchmarks to meet those needs, and determine specific services to be provided. (Cal. Ed. Code §§ 56300-56302; 20 U.S.C. § 1412.) Students identified by the local educational authorities as qualifying for services under the IDEA are eligible for "special education." The term "special education" means "specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability, including instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings." (20 U.S.C. § 1401(25).) Defendants have provided no "specially designed education", despite the acknowledgement that she is a student with special needs.

In accordance with the IDEA, the states' funding is premised on the state providing all disabled students with a free and appropriate public education by developing an IEP for each child with a disability. (*See* 20 U.S.C. § 1401(a)(18) and 20 U.S.C. § 1415(a)(5).) Congress defined a free and appropriate public education, sometimes referred to as the acronym "FAPE", as "special education and related services that (A) have been provided at public expense, under public supervision and direction without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary, or secondary school education in the state involved; and (D) are provided in conformity with the individual education program under section 1414(d) of this title." (20 U.S.C. § 1401(8).) The term "individual education program",

9

1  commonly known as "IEP," means a written statement for each child with a disability that is

2  developed, reviewed and revised in accordance with § 1414(d) of the IDEA. The IEP is central to

3  the mandates and goals of the IDEA.

4       Under 20 U.S.C. § 1414(d)(1)(A)(iii), the IEP is required to include a statement of the

5  special education and related services and supplementary aids and services to be provided to the

6  student, or on behalf of the student, and statement of the program modifications or supports for

7  school personnel that will be provided to the student. Additionally, the IEP is required to state

8  "the projected date for the beginning of services and modifications[...], and the anticipated

9  frequency, location, and duration of those services and modifications." (20 U.S.C. §

10  1414(d)(1)(A)(vi).) In cases where a student's behavior impedes her learning or that of others, the

11  IEP team is mandated to consider the use of positive behavioral interventions and supports, and

12  

13  other strategies, to address that behavior.  (20 U.S.C. § 1414(d)(3)(B)(i).)

14       In the instant case, the Defendant did not comply with the procedural or substantive

15  requirements of the IDEA. Therefore, dismissing Plaintiff's action would deny Sarah the benefit

16  of an appropriate educational opportunity. This would be contrary to the Congressional intent of

17  providing disabled students a free and appropriate public education.

18  

19  **C. Defendant School District Did Not Comply with the Procedural or Substantive Requirements of the IDEA which Resulted in the Denial of a Free and Appropriate**

20  **Public Education to Sarah.**

21       The Supreme Court of the United States has held that in order to determine if a state had

22  provided a free and appropriate public education, a two-part analysis must be undertaken.

23  (*Rowley*, 458 U.S. 176) First, the Court must determine if the rigorous procedural requirements

24  of the IDEA have been met. Second, the Court must determine whether the state has met the

25  substantive components of the IDEA by providing an "appropriate" education. (*Id.*)

Plaintiff's Opposition to Motion to Dismiss.

1    The issue of whether a child was denied a free and appropriate public education is a

2  mixed question of law and fact and therefore, should not overly rely on the OAH decision. (*See*

3  *W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23*, 960 F.2d 1479 (9th Cir. 1992).)

4

5    **D. Defendants Failed to Comply with IDEA Procedural Requirements.**

6    IDEA outlines rigorous procedural requirements to ensure students with disabilities the

7  right to a FAPE. The IDEA requires that the school district collaborate with parents in

8  developing IEPs. (20 U.S.C. § 1414.) In the instant case, the Defendants failed to collaborate

9  with Sarah's parents.

10

11    **1. Defendants Failed to Comply with IEP Requirements.**

12    The proposed IEPs failed to state the beginning dates, frequency, and duration of offered

13  services. An IEP is required to state "the projected date for the beginning of services and

14  modifications..., and the anticipated frequency, location, and duration of those services and

15  modifications." (20 U.S.C. § 1414(d)(1)(A)(vi).) In the instant case, none of the proposed

16  services in the IEP indicate the anticipated frequency, location, and duration of those services.

17  Defendants have failed to comply with the rigorous statutory requirement of stating the

18  beginning dates, frequency, and duration of offered services in IEPs.

19

20    **2. Defendants Failed to Include Parents' View in IEP.**

21    Defendants failed to include Sarah's parents' dissenting views in the IEP documents. The

22  Supreme Court has noted that the highly technical procedural requirements were intended by

23  Congress to be followed precisely and that the role of the parents in the IEP process is an integral

24  part of the IDEA. (*See W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23*, 960 F.2d 1479

25  (9th Cir. 1992).) In discussing the importance of the formal written offer requirement, the Ninth

Plaintiff's Opposition to Motion to Dismiss.

1    Circuit has noted that the requirement is not merely technical, but rather serves the important

2    purpose of creating a clear record of the educational placement and other services offered to the

3    parents. (*See Union Sch. Dist. v. Smith*, 15 F.3d 1519 (9th Cir. 1994).) A parent's response to a

4    formal written offer should be part of any IEP.

5        In the instant case, the Defendants have not included Plaintiff's parents' dissenting views.

6    Although the Defendants may have briefly mentioned the parents' signed written dissent in

7    meeting minutes or conveniently placed the parents' signed written dissent letter in the student's

8    file, there is no inclusion of the letter in the formal IEP documents. Without a formal

9    incorporation of the parents' dissent letter in an IEP document, the Defendant failed to comply

10   with IDEA procedural requirements of including parents' dissenting views in a decision about

11   appropriate education.

12

13   **3. Defendants Failed to Comply with "Stay Put" Requirement.**

14

15       Defendants failed to comply with the "stay put" requirement while drafting a new IEP. 20

16   U.S.C § 1415(j), commonly referred to as the "stay put" provision, requires the school to

17   maintain a disabled child's educational program until any placement dispute between the agency

18   and the child's parents is resolved. (20 U.S.C. § 1415(j).) California has adopted the goals and

19   procedures of IDEA in the California Education Code. California's "stay put" provision reads:

20   "During the pendency of the hearing proceedings, including the actual state level hearing, the

21   pupil shall remain in his or her present placement ... unless the public agency and the parent

22   agree otherwise." (Cal. Educ.Code § 56505(d) (2001).)

23       In the instant case, Sarah's parents and the Defendant had unresolved disagreements

24   regarding the proposed IEP, so the Defendant was supposed to maintain Sarah's educational

25   program specified in the prior IEP until any dispute between Sarah's parents and the Defendant

Plaintiff's Opposition to Motion to Dismiss.

1    was resolved. Sarah's prior IEP required an appropriately trained and credentialed speech

2    therapist. Defendants did not even invite such a therapist to the IEP meeting. When Sarah's

3    parents requested Defendant to allow Dr. Frank Marone (a highly qualified service provider who

4    has worked with Plaintiff for a number of years) to observe the student at school, Defendants

5    denied the request. Defendants failed to comply with "stay put" when they failed to discharge

6    their obligation to provide highly qualified services providers according to IEP. Plaintiff's

7    allegations in this regard are sufficient to survive the motion to dismiss.

8

9                    **4. Defendants Failed to Provide Written Notice.**

10        Defendants failed to comply with the procedural requirements related to prior written

11   notice. Guidance on the procedural requirements related to prior written notice is contained in 34

12   C.F.R § 300.503, which states the school must provide the parents of a child with a disability

13   written notice within a reasonable time before it proposes to initiate or change the identification,

14   evaluation, or educational placement of the child or the provision of FAPE to the child.

15   Furthermore, 34 CFR § 300.503 requires that the notice include "(1) a description of the action

16   proposed or refused by the agency; (2) an explanation of why the agency proposes or refuses to

17   take the action."

18        The reason for this procedural requirement is that without the rigorous procedural

19   safeguard, the crucial role of the parents is rendered useless. One court reasoned that 20 U.S.C. §

20   1415(b)(1)(C))) explicitly requires written notice and based on the Supreme Court's holding in

21   *Rowley*, that the procedural safeguards embodied in the IDEA were intended by Congress to be

22   followed precisely. (*See Glendale Unified Sch. Dist. v. Talar Almasi*, 122 F.Supp.2d 1093(9th

23   Cir. 2000).) Therefore, the *Union* Court concluded that the "formal written requirement has an

24

25

1    important purpose that is not merely technical, and we therefore believe it should be enforced

2    rigorously." (*See Union*, supra 15 F.3d at 1519.)

3        In the instant case, Defendants ignored their obligation to comply with the written notice

4    requirement. When Sarah's parents asked for further information on the Resource Specialist

5    Program ("RSP") before agreeing to allow it into the IEP, Defendant failed to follow the

6    statutory procedural requirement of including a description of RSP proposed by the Defendants,

7    or an explanation of why the Defendants refused to give more information. When Sarah's parents

8    made the further effort of requesting that the District obtain consent prior to changing Plaintiff's

9    program and honor the stay put provisions of the last agreed upon IEP, Defendants failed to act

10   on the parents' request, or reply at all in writing. Defendants have ignored the obligation of

11   complying with the procedural requirements related to prior written notice.

12

13                **5. The OAH Failed to Follow Proper IDEA Procedure.**

14

15       The OAH's failure to provide prior notice of the due process hearing seriously infringed

16   on Sarah's right to a free and appropriate public education and the parents' ability to participate in

17   the process. IDEA requires a due process hearing within 30 days of the receipt of the complaint

18   if the local educational agency has not resolved the complaint to the satisfaction of the parents.

19   (20 U.S.C. § 1415(f)(1)(B)(ii).) However, not only did the OAH schedule the due process

20   hearing more than 45 days after the request, the OAH never sent notice of any pre-hearing

21   conference. Sarah's parents received a call from the OAH on the morning of the pre-hearing

22   conference to commence immediately. Sarah's parent was compelled to attend the telephonic

23   pre-hearing conference without preparation or prior notice. Similarly, Sarah's parents' request of

24   information regarding the hearing date and the scheduling of the pre-hearing conference was

25

1   simply ignored. Defendants severely violated Plaintiff's rights by failing to comply with IDEA

2   procedures.

3       As a result of the Defendants' failure to comply with the procedural requirements of the

4   IDEA, Sarah's education and her parents' ability to participate in the due process hearing were

5   substantially affected. Defendants' procedural violations resulted in a loss of educational

6   opportunity for Sarah.

7

8   **E. Defendants Failed to Comply with IDEA Substantive Requirements.**

9       The second prong of the *Rowley* test requires this Court to undertake the analysis of

10  whether the state has met the substantive components of IDEA: whether the local educational

11  agency has provided an "appropriate" education. The substantive component of the IDEA

12  requires that a student be provided with an education that meets her unique needs. In order to

13  determine if an education rises to this standard, the proposed program must be demonstrated to

14  be reasonably calculated to provide an educational benefit. (*Rowley*, 458 U.S. at 207.) A free and

15  appropriate public education is specifically defined under the IDEA under 20 U.S.C. § 1401(8).

16  Included in the definition is the requirement that an appropriate school is provided in conformity

17

18  of the individualized education program. 20 U.S.C. § 1414(d) discusses the requirements of an

19  IEP. The term is defined as follows:

20

21      (A) Individualized education program. The term "individualized education
        program" or "IEP" means a written statement for each child with a
22      disability that is developed, reviewed, and revised in accordance with this
        section and that includes...(iii) a statement of the special education and
23      related services and supplementary aids and services to be provided to the
        child, or on behalf of the child, and a statement of the program
24      modifications or supports for school personnel that will be provided for
        the child... (20 U.S.C. § 1400(d)).

25

15

Plaintiff's Opposition to Motion to Dismiss.

1   Additional guidance as to the definition of a FAPE is provided by the Supreme Court

2   when it interpreted what requirements are necessary to make a showing of a free and appropriate

3   public education. The *Rowley* Court stated "[t]he Act's requirement of a 'free appropriate public

4   education' is satisfied when the State provides personalized instruction with sufficient support

5   services to permit the handicapped child to benefit educationally from that instruction." (*Rowley*

6   458 U.S. at 187.)

7   In the instant case, Defendant failed to provide appropriate education to meet Sarah's

8   unique needs by among other things failing to offer a transition plan or following a behavior

9   intervention plan. In addition, the proposed IEP is not demonstrated to be reasonably calculated

10  to provide an educational benefit to satisfy the substantive components of the IDEA. There was a

11  denial of a free and appropriate education.

12

13  **F. Exhausting Administrative Remedies Would Have Been Futile.**

14

15  The exhaustion requirement is not rigid. (*Porter v. Bd. Of Trustees Of Manhattan Beach*,

16  (9th Cir. 2002) 307 F. 3d 1064, 1069.) Plaintiff need not seek a due process hearing "where

17  resort to the administrative process would be either futile or inadequate." (Hoeft v. Tucson

18  Unified Sch. Dist. (9th Cir. 1992) 967 F.3d 1298, 1303.) Plaintiff's allegations against the

19  Defendant Office of Administrative Hearings in the pleadings in this case demonstrate that any

20  administrative action on any claims would have been treated with little care as to procedural or

21  substantive due process. Any such claims would have been futile.

22

23  **G. Plaintiff Could Amend The Complaint to Include Additional Detail.**

24  Plaintiff believes that her pleading contains the short and plain statements required by the

25  Federal Rules of Civil Procedure. However, should this Court disagree with that assessment,

Plaintiff's Opposition to Motion to Dismiss.

1  Plaintiff requests leave to amend the complaint. Specifically, Plaintiff could add detail regarding

2  the harm to Sarah by the named individual defendants, and pray for equitable relief from the

3  named individual defendants.

### IV.    CONCLUSION

This Court should deny Defendants' motion, or in the alternative, grant Plaintiff leave to

amend.

WALTON & ROESS LLP

Dated: November 9, 2007                         By  /s/ Timothy J. Walton
                                                    Timothy J. Walton
                                                    Attorneys for Plaintiff

17